UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

STEVEN T. LOWERY,                        )
                                         )
                 Plaintiff,              )
                                         )
        v.                               )     No. 1:21-cv-01871-JPH-MKK
                                         )
LOUIS DEJOY, Postmaster General,         )
United States Postal Service, Great Lakes )
Area Operations,                         )
                                         )
                 Defendant.              )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Steven Lowery, brought this action alleging race discrimination and retaliation against his employer, Louis DeJoy, Postmaster General of the United State Postal Service ("the Postmaster General"). Dkt. 1. Mr. Lowery claims that he was harassed, subjected to a hostile work environment, and retaliated against because of his race and because he engaged in protected activity. *Id.* at 4. The Postmaster General has filed a motion for summary judgment. Dkt. [37]. For the reasons below, that motion is **GRANTED**.

**I.**
**Facts and Background**

Because the Postmaster General has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

1

### A. Mr. Lowery's employment history with USPS

Steven Lowery, an African American male, began working for USPS as a Transitional Employee in late 2011 or early 2012.  *See* dkt. 37-1 at 17 (Lowery Dep. at 16:14–19); dkt. 37-2 at 5.  He became a USPS City Carrier in 2014. Dkt. 37-1 at 18–19 (Lowery Dep. at 17:16–18:12).  In 2016, Mr. Lowery suffered a knee injury while delivering mail that left him permanently unable to perform his duties as City Carrier.  *Id.* at 20–22 (Lowery Dep. 19:16-21:3); dkt. 37-8 at 4.  Mr. Lowery continued to work for USPS and, through USPS's Office of Workers' Compensation Programs ("OWCP"), began receiving forty hours of work per week in 2016 with the Delivery Operations Program.  Dkt.  37-10 at 1–2.  In that role, Mr. Lowery reported to Delivery Operations Manager Gregg Thurston.  *Id.*

Even though he was assigned to the Delivery Operations Program, Mr. Lowery's title remained "City Carrier" and he remained a union member.  Dkt. 37-10 at 3.  He was required to use a timecard to clock in and out or submit a handwritten form known as a Form 1260 (though use of this form was discouraged) to allow his supervisor to ensure he was working the required forty hours per week.  *Id.*  Other employees supervised by Mr. Thurston were not subject to the same timekeeping requirements.  Dkt. 31-1 at 72 (Lowery Dep. at 71:7–25).

Around April 2019, Mr. Thurston became concerned about Mr. Lowery's timekeeping and habitual tardiness.  Dkt. 37-13.  USPS's internal system indicated that Mr. Lowery was assigned an 8:30 arrival, dkt. 37-1 at 60 (Lowery

Dep. at 59 9:15), but Mr. Thurston allowed a later arrival time with advance notice due to Mr. Lowery's morning childcare responsibilities, dkt. 37-10 at 2. Another USPS employee reporting to Mr. Thurston, Jennifer Morgan, was similarly provided leeway to handle childcare responsibilities and communicated with Mr. Thurston whenever she would be late to work  Dkt. 37-10 at 4.

Mr. Lowery testified that his *de facto* approved starting time was 9:30 a.m., Dkt. 37-1 at 45 (Lowery Dep. at 44:3–11), 10:00 a.m., Dkt. 37-8 at 12, or 10:30 a.m., Dkt. 37-2 at 9.  Regardless, he frequently arrived at 10 a.m. or later.  Dkt. 37-1 at 48 (Lowery Dep. 47:7–16).  Mr. Lowery often did not give Mr. Thurston advance notice that he would be reporting to work late.  Dkt. 37-10 at 3.

Between April 25, 2019, and March 27, 2020, Mr. Thurston sent thirteen emails to Mr. Lowery regarding issues with his attendance, timekeeping practices, or hours worked.  Dkts. 37-13, 37-14, 37-16, 37-17, 37-18, 37-19, 37-20, 37-21, 37-22, 37-23, 37-24, 37-25.  In these emails, Mr. Thurston informed Mr. Lowery of instances when his timesheet did not record eight hours for a given day or was otherwise inadequate, dkts. 37-13, 37-18, 37-20, 37-21, 37-22, 37-23, 37-24, 37-25; asked Mr. Lowery why he used the disfavored Form 1260, dkt. 37-14, 37-19; and asked Mr. Lowery to review his time reports where there were unscheduled absences, dkt. 37-16, 37-17.

### B. Mr. Lowery's alleged harassment

Mr. Lowery testified that Mr. Thurston would "very frequently . . . announce [his] arrival time" by calling him "Mr. Part-time" and "Mr. 1260" and saying "glad you could join us" in reference to Mr. Lowery's late arrivals in front of other USPS workers.[1]  Dkt. 37-8 at 1; dkt. 37-1 at 126–27 (Lowery Dep. at 125:25–126:3).  Mr. Lowery also claims that Mr. Thurston would "in front of [Mr. Lowery's] co-workers[,] . . . demonstrate how much [Mr. Lowery] do[es] not know" and point out Mr. Lowery's spelling difficulties.  Dkt. 37-1 at 151 (Lowery Dep. at 150:1–17).  Mr. Lowery stated he was "always the joke." Dkt. 37-1 at 152 (Lowery Dep. at 151:7–14).  Mr. Lowery testified, however, that he did not believe that Mr. Thurston was "taking it malicious" and that he thought "maybe it's just a joke."  Dkt. 37-1 at 128 (Lowery Dep. 127:9–19).

Additionally, Mr. Thurston texted Mr. Lowery before February 4, 2019, stating, "[w]e were betting who'd be last [to arrive] you or Marilyn lol."  Dkt. 37-3 at 3.  The other employee referred to in the text, Marilyn, is also African American.  Dkt. 37-1 at 159 (Lowery Dep. at 158:5–6).  Mr. Lowery responded with a string of smiling emojis.  *Id.*

On a business trip from Indianapolis to the Chicago area, Mr. Thurston took photos of Mr. Lowery after he fell asleep in the car, and Mr. Thurston then circulated the photos to other USPS workers without Mr. Lowery's knowledge

---

[1] In his Complaint, Mr. Lowery alleges that he was mocked in front of his co-workers on five specific dates: July 27, 2018, December 18, 2019, December 20, 2019, February 20, 2020, and March 26, 2020.  Dkt. 1 at 3.  Mr. Lowery has not designated evidence about what, in particular, was said on those dates.

or consent.  Dkt. 37-1 at 125–26 (Lowery Dep. at 124:11–125:18).  Mr. Lowery

testified that he believes Mr. Thurston's circulation of the photo was

harassment because "[p]eople are laughing at me, and I have no reason why,

not knowing that he has pictures that he sent everybody of me sleeping." *Id.* at

126 (Lowery Dep. 125:11–18).

### C. Mr. Lowery's removal from the Delivery Operations Program

In April of 2020, Mr. Thurston's supervisor, Dale Sparks, determined

that Mr. Lowery should be removed from his assignment to the Delivery

Operations Program and returned to his former role due to tardiness and

timekeeping issues.  Dkt. 37-10 at 3–4.  Mr. Lowery received a phone call from

Regina Lime, his former supervisor, who informed him that he would be

returning to his former role.  Dkt. 37-1 at 32 (Lowery Dep. at 31:11–16).  Mr.

Lowery confirmed this with Mr. Thurston over the phone and then with Mr.

Sparks in a separate call.  Dkt. 37-1 at 33 (Lowery Dep. at 32:9–22).  Mr.

Lowery's work for the Delivery Operations Program ended shortly thereafter,

but Mr. Lowery's employment with USPS continued in other positions.  Dkt.

37-1 at 237 (Lowery Dep. at 236:1–21).

On April 27, 2020, Mr. Thurston sent an email to a large group of USPS

employees instructing them to "message Jennifer Morgan & myself with all

communications for PRS, Amazon, MDD, PASS & DSS" and that they may

"remove Steven Lowery from those same communications." Dkt. 37-26.  Mr.

Lowery was not among the recipients of the email.  *Id.*  Mr. Thurston did not

believe Mr. Lowery would see the email.  Dkt. 37-1 at 148 (Lowery Dep. at

147:18–20).

### D. Mr. Lowery's discrimination claims

Mr. Lowery initiated an Equal Employment Opportunity ("EEO")

complaint in April 2020.  Dkt. 37-15 at 1.  His complaint was formally filed in

August 2020, and he received a Final Agency Decision denying his claim in

March 2021.  Dkt 1-1 at 24–25.  Mr. Lowery brought this action on June 24,

2021, alleging that he was subjected to race discrimination, including a hostile

work environment, in violation of 42 U.S.C. § 2000e.  Dkt. 1.  Mr. Lowery also

claims he was retaliated against for protected behavior under Title VII of the

Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1988.  *Id.*

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must

inform the court "of the basis for its motion" and specify evidence

demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this

burden, the nonmoving party must "go beyond the pleadings" and identify

"specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the

evidence "in the light most favorable to the nonmoving party and draw[s] all

reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

Mr. Lowery claims that he was subjected to discriminatory treatment, retaliation, and a hostile work environment.  Dkt. 1 at 4.  The Postmaster General argues that he is entitled to summary judgment on the disparate treatment and retaliation claims because Mr. Lowery did not respond to the Postmaster General's arguments for summary judgment on those claims.  *See* Dkt. 40 at 3–5 (Mr. Lowery's brief presenting argument on only hostile work environment).  By failing to respond, Mr. Lowery has "abandoned the claim[s]" and may no longer pursue them, *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008), so Defendant's Motion for Summary Judgment is **GRANTED** as to Mr. Lowery's disparate treatment and retaliation claims.

Mr. Lowery's remaining claim alleges that Mr. Thurston subjected him to a hostile work environment because of his race in violation of Title VII of the Civil Rights Act of 1964.  Dkt. 40 at 1.  Title VII makes it unlawful for an employer to discriminate against any individual "because of such individual's race," and prohibits subjecting an employee to a hostile work environment. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (quoting 42 U.S.C. § 2000e–2(a)(1)).  "When 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or [pervasive] to alter the conditions of the victim's employment and create an abusive working

environment,' Title VII is violated." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th

Cir. 2018) (quoting *Boss*, 816 F.3d at 920).

To survive summary judgment, a plaintiff alleging a hostile work

environment must show "sufficient evidence demonstrating (1) the work

environment was both objectively and subjectively offensive; (2) the harassment

was based on membership in a protected class or in retaliation for protected

behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for

employer liability." *Id.* at 20. "[H]arassment must be 'so severe or pervasive' as

to 'alter the conditions of [the victim's] employment and create an abusive

working environment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786

(1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "[A]

hostile work environment is one that is 'both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one

that the victim in fact did perceive to be so.'" *Hilt-Dyson v. City Of Chicago*, 282

F.3d 456, 462–63 (7th Cir. 2002) (quoting *Faragher*, 524 U.S. at 787 (1998)).

The Postmaster General argues that he is entitled to summary judgment

because the designated evidence does not allow a reasonable jury to find that

Mr. Lowery's work environment was both subjectively and objectively offensive

or that the conduct was severe or pervasive. Dkt. 38 at 25. He contends that

the comments on Mr. Lowery's tardiness, timekeeping habits, and the photos

taken of him by Mr. Thurston were simple teasing and too infrequent to be

pervasive. *Id.* at 25–26. Finally, he argues that the email removing Mr. Lowery

from future communications was merely a routine email as part of standard

business practice. *Id.* Mr. Lowery argues that the complained-of behavior was a pattern of conduct designed to humiliate him. Dkt. 40 at 4.

To maintain his hostile work environment claim, Mr. Lowery must designate evidence showing that the conduct he was subject to was objectively severe. "[O]bjective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). To determine whether conduct constitutes an objectively hostile work environment, the Court must assess the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hilt-Dyson*, 282 F.3d at 463 (quoting *Faragher*, 524 U.S. at 787–88). "We expect a certain level of maturity and thick skin from employees. 'Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment.'" *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900–01 (7th Cir. 2018) (quoting *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012)). In other words, "[d]iscrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees. Instead, the law forbids an employer from creating an actionably hostile work environment for members of protected classes." *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001).

In 2018, the Seventh Circuit analyzed when summary judgment is appropriate on a plaintiff's claim of a race-based hostile work environment. *Abrego*, 907 F.3d at 1015. The plaintiff relied on evidence that his supervisors were "'short tempered,' 'hostile,' unfairly critical, and disrespectful" and that he was 'subjected to excessive monitoring.'" *Id.* The Court concluded that the defendant was entitled to summary judgment because "[s]uch conditions are not objectively offensive, [or] severe." *Id.* Similarly, in *Watkins v. Riverside Med. Ctr.*, the Seventh Circuit examined whether there was a triable issue of fact regarding a hostile environment based on racial discrimination when the plaintiff alleged that her supervisor had "frequently referred to her as having 'trouble' and asked if she was staying out of trouble." 758 F. App'x 547, 551 (7th Cir. 2019). The plaintiff argued that these comments implied laziness and were thus objectively offensive because they were sufficiently related to invidious stereotypes. *Id.* The Court determined that "[b]eing called 'trouble' does not show that Watkins's workplace was permeated with discriminatory intent, physically threatening, humiliating, or otherwise so severe as to be a hostile work environment," and the "sparse evidence could not lead a reasonable jury to conclude that she suffered from a hostile work environment." *Id.*

Here, the conduct that Mr. Lowery complains of is like the complained-of conduct in *Abrego*. So, like the plaintiff in *Abrego*, Mr. Lowery has not shown that his work environment was objectively offensive or severe. While Mr. Thurston's comments—referring to Mr. Lowery as "Mr. Part-Time" etc.—may

have been inappropriate, they were not "'so severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher*, 524 U.S. at 786.  Similarly, Mr. Thurston's comments regarding lateness and timekeeping may have been unprofessional, but they were not abusive or threatening.  Mr. Thurston's comments are similar to those made by the supervisors in *Abrego* and *Watkins*.  Like the plaintiff in *Watkins* being called "trouble," Mr. Lowery being called "Mr. Part-Time" did not amount to a hostile work environment.

And the designated evidence does not provide "a racially charged context" as Mr. Lowery contends, dkt. 40 at 4.  The comments themselves are facially race-neutral and Mr. Lowery has not designated evidence from which a jury could reasonably infer that the comments were based on racial animus or had anything whatsoever to do with race. *See Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) ("Any notion of race-based hostile environment can be quickly dispatched.  The record contained not a single racially offensive email, remark, or other hint of racial animus.").

Last, Mr. Lowery argues that the Postmaster General "failed to pursue any formal discipline against [him] prior to terminating his Detail with Delivery Operations."[2]  Dkt. 40 at 4.  Mr. Lowery contends that instead of using formal

---

[2] Mr. Lowery makes this argument in support of his hostile-work-environment claim, rather than in support of a disparate treatment claim that he was subjected to an adverse employment action without the use of progressive discipline.  *See* dkt. 40 at 4 (arguing that under *Boss*, 816 F.3d at 920, Mr. Thurston pursued an "ongoing pattern of public humiliation [that was] both objective and subjectively offensive" in lieu of formal discipline).

discipline, Mr. Thurston "chose to publicly humiliate Plaintiff." *Id.* But as discussed above, the conduct that Mr. Lowery has identified in support of his claim does not rise to the level of creating a hostile environment. And Mr. Lowery offers no legal authority to support his theory that not being disciplined amounts to a hostile work environment. *See id.*

In sum, no factfinder could reasonably infer from the designated evidence that Mr. Lowery was subjected to a hostile work environment.

### IV.
### Conclusion

Defendant's motion for summary judgment is **GRANTED**. Dkt. [37]. Final judgment shall be entered accordingly.

**SO ORDERED.**

Date: 6/2/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.